UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-cv-25291-MGC

DENISE PINEDA, and others
similarly-situated,

    Plaintiffs,

v.

PESCATLANTIC GROUP, LLC, a Florida
limited liability company, and CESAR CALVO,
individually,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants, PESCATLANTIC GROUP, LLC ("Pescatlantic") and CESAR CALVO ("Calvo") (collectively "Defendants"), by and through their undersigned counsel, pursuant to Rule 56, Fed. R. Civ. P., and Rule 7.5.C, S.D. Fla. L.R., hereby file their Motion for Partial Summary Judgment and Memorandum of Law in Support, and state as follows:

### STATEMENT OF UNDISPUTED FACTS

1.    Plaintiff worked for Pescatlantic from March 2016, through October 28, 2016, as a Logistics Coordinator. (Defendants' Statement of Material Facts, ¶1). During the time that Plaintiff worked for Pescatlantic, the company employed 5-6 employees, including Plaintiff and Defendant Calvo. (*Id.*).

2.    Plaintiff was compensated at a rate of $1,375.00 every two weeks during her 90-day probationary period. (Defendants' Statement of Material Facts, ¶2).

1

3. Plaintiff's position is that during her probationary period, her schedule of work was from 9:00 a.m. to 6:00 p.m. with one hour break for lunch. (Defendants' Statement of Material Facts, ¶3), which she admits she took every day.

4. During her probationary period, Plaintiff never discussed with any of the Defendants or her supervisors that she was working for hours for which she was not paid for. (Defendants' Statement of Material Facts, ¶4).

5. During her probationary period, Plaintiff never engaged in protected activity regarding any alleged unpaid hours of work or improper compensation for her hours of work by Defendants. (Defendants' Statement of Material Facts, ¶5).

6. After her probationary period was completed, Plaintiff demanded and was granted a raise in her salary, so that her net pay would not be affected by being paid through Pescatlantic's payroll company ADP. (Defendants' Statement of Material Facts, ¶6).

7. At no point did Plaintiff raise any concerns about overtime or improper payment of wages by Defendants. (Defendants' Statement of Material Facts, ¶7).

8. The only time during Plaintiff's employment that she mentioned her hours of work was when Pescatlantic changed its employees' lunch break from one hour to thirty minutes. (Defendants' Statement of Material Facts, ¶8). At that time, Plaintiff did not complain about improper overtime pay but about adjusting her schedule so that she would continue working a maximum of forty (40) hours per week. (*Id.*).

9. Plaintiff admits that the first time that she ever complained about overtime to Defendants was after she was no longer employed by Pescatlantic. (Defendants' Statement of Material Facts, ¶9).

10. Plaintiff claims that she verbally complained to Calvo the morning before she separated from her employment, when Calvo allegedly had a meeting with Plaintiff to inform her that he was not going to make any changes to Plaintiff's compensation once the new DOL interpretation went into effect two months later on December 1, 2016. (Defendants' Statement of Material Facts, ¶10). As such, Plaintiff never complained about any actual unpaid overtime.

11. The DOL new interpretation never went into effect because on November 22, 2016, a court in Texas stayed the interpretation indefinitely. (Defendants' Statement of Material Facts, ¶11).

12. Plaintiff never complained of overtime until after her employment with Pescatlantic ended. (Defendants' Statement of Material Facts, ¶12). Plaintiff's sole complaint before her employment with Pescatlantic ended was her refusal to work on Saturdays. (*Id.*).

13. There were no negative consequences for Plaintiff's refusal to work on Saturdays. (Defendants' Statement of Material Facts, ¶13). In fact, one of Plaintiff's co-workers, Walter, volunteered to work on Saturdays so that Plaintiff would not have to. (*Id.*).

14. Plaintiff voluntarily left her job when she was asked not to use her phone for personal reasons during a meeting. (Defendants' Statement of Material Facts, ¶14).

15. Even if Plaintiff had not voluntarily left her job, Defendants had valid, non-discriminatory reasons for terminating Plaintiff's employment, namely, her excessive use of her phone for personal calls during business hours. (Defendants' Statement of Material Facts, ¶15).

16. Plaintiff acknowledges that Pescatlantic had a clear policy against employees using their phones during business hours for personal reasons other than emergencies. (Defendants'

Statement of Material Facts, ¶16). Plaintiff signed an acknowledgment of receipt for the company's handbook. (*Id.*).

17. Plaintiff admits receiving a copy of this policy in writing (Defendants' Statement of Material Facts, ¶17) and she signed an acknowledgment of receipt for Pescatlantic's handbook which contains this policy. (*Id.*). Plaintiff further admits that she was aware of this policy because she assisted in creating Pescatlantic's employee handbook. (*Id.*).

18. Plaintiff admits that she used her phone regularly to communicate with her children. (Defendants' Statement of Material Facts, ¶18). Plaintiff's position is that every call from her children constitutes an emergency. (*Id.*).

19. It is undisputed that Plaintiff had been verbally counseled about her excessive use of her phone for personal reasons and for being insubordinate with her supervisors at that time, Nilma Labrada. (Defendants' Statement of Material Facts, ¶19).

20. It is further undisputed that Plaintiff lied on her resume about having a High School Diploma when in fact she did not have such a degree. (Defendants' Statement of Material Facts, ¶20).

21. Had Defendants known that Plaintiff lied on her Resume, she would have never been hired and/or she would have been fired immediately. (Defendants' Statement of Material Facts, ¶21).

## LEGAL ARGUMENT

### I.  APPLICABLE STANDARD

Summary judgment is proper if when the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

4

as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1896). The moving party bears the initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the moving party satisfies this burden, it shifts to the party opposing the motion to go beyond the pleadings and designate "specific facts showing that there is genuine issue for trial." *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). A factual dispute is genuine only if the evidence is such that a reasonable fact finder could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *see also Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Thus, the party opposing summary judgment may not rest upon the mere allegations or denials of the pleadings, but must present sufficient evidence favoring the non-moving party for a jury to return a verdict in favor of that party. *Id.* at 249.

II. **SUMMARY JUDGMENT IS PROPER BECAUSE PLAINTIFF FAILS TO MAKE A PRIMA FACIE CASE OF RETALIATORY DISCHARGE UNDER THE FLSA**

Plaintiff has alleged a cause of action for retaliatory termination under the Fair Labor Standards Act ("FLSA"). The facts, however, viewed in the light most favorable to Plaintiff, as is required on a motion for summary judgment, are insufficient to prove a prima facia case of retaliation. Accordingly, Defendants are entitled to summary judgment in their favor as to count III of Plaintiff's Complaint.

A. **PLAINTIFF BEARS THE BURDEN OF PROVING A PRIMA FACIE CASE**.

The basic allocation of the parties' respective burdens and the order of presentation of proof in a retaliation case were initially set forth by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and fore recently in *Reeves v. Sanderson Plumbing*

5

*Products, Inc.*, 530 U.S. 130 (2000). The plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of retaliation. *McDonnell Douglas* at 802. The plaintiff "cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case." *Pace v. Southern Railway System*, 701 F.2 1383 (11th Cir. 1983). "Personal opinions and conclusory allegations, in the absence of supporting evidence, are insufficient to withstand summary judgment." *Chambers v. Walt Disney Co.*, 132 F. Supp.2d 1356 (M.D. Fla. 2001), *citing Holifield v. Reno*, 115 F.3d 1555, 1564 and n.6. (11th Cir. 1997).

If the plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant employer to articulate a legitimate non-discriminatory reason for its employment decision or conduct. *McDonnell Douglas* at 802. Finally, if the defendant employer carries its burden, the plaintiff must prove that the legitimate reasons offered by the defendant employer were merely a pretext for retaliation. *Id.* at 802-804. The ultimate burden of persuading the trier of act that the defendant intentionally discriminated against the plaintiff remains at all time with the plaintiff. *Texas Department of Community Affairs v. Burden*, 450 U.S. 248, 253 (1981). As will be demonstrated below, Plaintiff cannot establish a prima facie case, and therefor Defendants are entitled to partial summary judgment as a matter of law as to count —- of Plaintiff's complaint.

B. **THE EVIDENCE IS INSUFFICIENT TO SUPPORT A FINDING OF RETALIATION UNDER THE FLSA**.

To establish a prima facie case of retaliation under the FLSA, Plaintiff must demonstrate that "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse

6

action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342-43 (11th Cir. 2000) (*citing Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208-09 (10th Cir.1997)). The employer must then articulate a legitimate nonretaliatory reason for the adverse employment action. *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 822 (11th Cir. 2008). "If the employer asserts a legitimate reason for the adverse action, the plaintiff may attempt to show pretext." *Id.* at 1343.

Plaintiff cannot sustain her burden because she admittedly complained *only after her employment with Defendants had ended*. (*Exhibit 1*: Deposition Transcript of Denise Pineda, pp. 37:19-38:6). Indeed, Plaintiff's deposition testimony is clear that she only complained to Defendants once via email and that said email was sent to Defendants after she was no longer employed with the company. (*Id.*). Given Plaintiff's sworn testimony, even if Plaintiff's sole complaint raises to the level of protected activity (which Defendants dispute) Plaintiff cannot prove that she suffered an adverse employment action as a result of that complaint when she was no longer working for Defendants.

Defendant anticipates that Plaintiff will argue that she verbally complained to Calvo before her employment with Pescatlantic ended. However, even if Plaintiff's testimony is taken as true, her alleged complaint does not raise to the level of protected activity.

According to Plaintiff's testimony, on October 28, 2016, Calvo called her in for a one-to-one meeting prompted by a change in the law that was set to enter into effect on December 1, 2016. (*Exhibit 1*: Deposition Transcript of Denise Pineda, p. 38:9-24). Plaintiff testified that Calvo told her that he did not care about the changes to the law and that he was not going to pay her

7

overtime. (*Id.*). In response, Plaintiff testified that she told Calvo that she was not going to work overtime without being paid for her time:

```
Q    Okay. As a result of that, what did you
     say back to him?
A    I told him it was illegal for him to
     have me work without overtime pay.
Q    Okay. What happened after that?
A    He told me that if I wasn't willing to
     work without overtime pay, that he would
     let me go.
Q    Okay. Did you say anything back to him?
A    Yes, I told him then I guess I have no
     other choice because I wasn't going to
     do it.
Q    You weren't going to do what?
A    I wasn't going to work for free on my
     extra time for free.
```

(*Exhibit 1*: Deposition Transcript of Denise Pineda, p. 40:2-14). "To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1335. The complaint in the present case, though, is neither detailed nor reasonable in light of the context in which it was allegedly made. Plaintiff's "complaint" was neither about being currently owed overtime nor about any current or past failure to receiving proper compensation for her hours of work. At best, Plaintiff simply refused to work overtime in the future when and if the new interpretation went into effect. Because the new interpretation never went into effect, Defendants' alleged threat to not pay overtime in the future lacks sufficient specificity and reference to the statute as required by the Supreme Court.

C. **DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR BECAUSE PLAINTIFF HAS FAILED TO MEET HER BURDEN OF SHOWING THAT DEFENDANTS' LEGITIMATE NON-RETALIATORY REASONS FOR HER TERMINATION WERE PRETEXTUAL**.

As stated earlier, in order to prevail in an employment discrimination case, the plaintiff must first make out a prima facie case. *Early v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). When a defendant produces legitimate non-discriminatory reasons for the adverse employment action, the burden shifts back to the plaintiff to establish that these reasons were pre textual. *Id.* at 1081, *citing Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Mere conclusory allegations will not suffice. *Id.*, *citing Mauter v. Hardy Corp.*, 825 F.2d at 1554, 1558 (11th Cir. 1987). Most importantly, the plaintiff always beard the ultimate burden of proving retaliatory treatment by a preponderance of the evidence. *Burdine*, at 253.

In the present case, even assuming Plaintiff can establish a prima facie case for retaliation, Defendants would still be entitled to summary final judgment as a matter of law as to count III because Defendants have produced evidence of legitimate non-discriminatory reasons to terminate Plaintiff,[1] and Plaintiff has not presented, nor can she present, any evidence from which a reasonable jury could conclude that Defendants' justifications were pretextual.

Defendants represent that had Plaintiff not left voluntarily, she would have been terminated because of her insubordination and excessive personal use of her cell phone during regular business hours.

---

[1] Defendants dispute that they terminated Plaintiff's employment. Rather, Defendants' position is that Plaintiff voluntarily resigned. However, for purposes of this motion, Plaintiff's testimony that she was fired is taken as true.

9

Plaintiff's history of insubordination began early in her employment and by July 14, 2016, Plaintiff's supervisor at the time, Nilma Labrada, was already frustrated by Plaintiff's consistent refusal to follow her orders. (*Exhibit 7*: Email from Nilma Labrada on July 14, 2016). Specifically, on July 14, 2016, Nilma Labrada sought assistance from Calvo to deal with Plaintiff:

> Cesar,
> I have reached my limit in giving instructions to Denise and for her to believe that she does not have to comply [with them].
> I just told her that I spoke with you and that once she enters her information for intake status, then I can input my part and then I will save it in private for you, your father and myself. She told me that you are the only one who can give her instructions. It seems that she is forgetting that I am indeed her supervisor.
> I leave it in your hands to make her understand.

(*Id.*). It is easily inferred from this email that this was not the first time when Plaintiff was insubordinate towards Ms. Labrada. In fact, another employee, Carlos Bustos, described the relationship between Plaintiff and her the supervisor Ms. Labrada as so difficult that they did not even talk to each other:

```
Q    They were not happy with each other?
A    Absolutely not.
Q    Why do you say that?
A    Because Ms. Labrada is here and Ms.
     Pineda was over there and if they had to
     send for any reason a paper, they said
     do me a favor, "Carlos, bring this paper
     to the other side."
Q    Because they didn't want to talk to each
     other?
A    Right.
```
.
(*Exhibit 6*: Deposition Transcript of Carlos Bustos, p. 37:15-24). It is clear from Ms. Labrada's email and Mr. Bustos testimony that Plaintiff was being insubordinate and that the relationship

10

between Plaintiff and her supervisor was so strained that they had stopped talking to each other directly, relying on other employees instead to deliver messages to each other. Importantly, Plaintiff's history of insubordination was documented by Pescatlantic well before the last day of her employment on October 28, 2016. (*Exhibit 7*: Email from Nilma Labrada on July 14, 2016).

Additionally, Plaintiff's use of her cell phone for personal reasons during business hours was a concern for Pescatlantic for months. As early as June 3, 2016, Plaintiff herself sent an email to Calvo regarding her excessive use other phone:

> Cesar,
> Nilma informed me that you do not want me using the phone to avoid errors. Me using the phone doesn't interfere with my work and doesn't cause me to commit errors. My son is in an extremely delicate stage right now, I honestly shouldn't even be here. If he or his father call me or text me, I will answer and respond. If this is an issue then please let me know and I will just go home to be with him instead.

(*Exhibit 8*: Email from Denise Pineda on June 3, 2016). Plaintiff was very well aware of the no personal phone usage policy because she helped create the handbook. (*Exhibit 1*: Deposition Transcript of Denise Pineda, pp. 24:1-25:6). Plaintiff signed an acknowledgment of receipt for the company's handbook. (*Id.*, p. 24:12-14; *Exhibit 10*: Plaintiff's Acknowledgment of Receipt of Employee Handbook). Despite her knowledge of this company policy, Plaintiff admits that she used her phone whenever her children called:

```
Q    Okay. Did you use your cell phone at
     Pescatlantic for any personal calls?
A    Only in emergency situations that he was
     aware of, like the children called,
     things like that, things that are
     normal, yeah.
Q    That's an emergency, when children call?
A    Yeah, if there're at home –
     MR. MARBAN: Object to form.
```

11

```
          A     If they're at home, you don't know
                what's going on, yes.
          Q     How often would you take those kind of
                phone calls?
          A     Whenever they were needed, I can't keep
                track of that.
```

(*Exhibit 1*: Deposition Transcript of Denise Pineda, p. 26:7-20).  This excessive use of Plaintiff's cell phone was witnessed by other employees like Carlos Bustos, who testified that Plaintiff was always on her cell phone and texting.  (*Exhibit 6*: Deposition Transcript of Carlos Bustos, p. 43:17-20).   This is also consistent with Plaintiff's last day of employment with Pescatlantic, when she was reprimanded by Calvo for being on her phone during business hours. (*Id.*, pp. 40:12-45:7).   Plaintiff's response was that she was on her five minute break. (*Exhibit 3*: Deposition Transcript of Cesar Calvo, p. 52:10–11; *Exhibit 6*: Deposition Transcript of Carlos Bustos, p. 42:15-16;).   This is when she decided to grab her things and leave.  (*Exhibit 3*: Deposition Transcript of Cesar Calvo, pp. 52:20-53:3; *Exhibit 6*: Deposition Transcript of Carlos Bustos, p. 45:1-13).

The overwhelming evidence of Plaintiff's issues with insubordination and excessive use of personal phone during business hours has not been rebutted by Plaintiff.  Indeed, other than her subjective statement that receiving calls from her children constitute emergencies, there is no evidence to contradict Defendants' documented issues with Plaintiff's conduct.   Plaintiff's subjective belief about what constitutes an emergency call is inadequate to defeat a motion for summary judgment when Defendants have presented numerous instances involving Plaintiff's insubordination and excessive use of her personal phone. *Morrison v. City of Bainbridge, Ga.*, 432 Fed. Appx. 877, 2011 WL 2533874 (11th Cir. 2011), *Youngs v. Meridian Pointe, WRMC, Inc.*, 2010 WL 3937382 (M.D. Fla. 2010).

If the defendant proffers some legitimate, non-discriminatory basis for terminating the plaintiff, the plaintiff must show pretext, "[t]o do so, Plaintiff must reveal 'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence'" *Id.* (*citing Springer v. Convergys Customer Mgmt. Group*, 509 F.3d 1344, 1348 (11th Cir. 2007)). "[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, so long as the reason is one that might motivate a reasonable employer." *Clark v. Alabama*, 141 Fed. Appx. 777, 788 (11th Cir. 2005). "Indeed, '[f]ederal courts do not sit to second-guess the business judgment of employers.'" *Id.* (*citing Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997)). In the instant case, Defendants have proffered valid non-discriminatory reasons for terminating Plaintiff and Plaintiff has not shown pretext. Florida is an employment at will state, and an employer has a right to dismiss an employee for misbehavior without having to provide warning or an opportunity to repent. It is undisputed that Plaintiff was excessively using her personal phone during business hours and that she was insubordinate. Accordingly, Defendants are entitled to summary final judgment on Plaintiff's retaliation claim.

D. **PLAINTIFF ENGAGED IN MISCONDUCT THAT WOULD HAVE RESULTED IN HER TERMINATION**.

Florida subscribes to the after-acquired evidence doctrine to limit damages in discrimination/retaliation cases. *Brown Distrib. Co. v. Marcell*, 890 So. 2d 1227, 1231 (Fla. 4th DCA 2005) (reversing trial court decision to not permit such evidence). The court cited with

approval *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995) which held that an employee's misconduct must be considered with respect to limiting available remedies. *Id.*

Here, Plaintiff admitted that he lied on various training forms and intentionally lied on her resume stating that she had a high school diploma when in fact she did not. (*Exhibit 1*: Deposition Transcript of Denise Pineda, pp. 5:23-6:6). In other words, Plaintiff admitted to lying to Defendants intentionally in order to obtain a position with Pescatlantic. Had Defendants known that Plaintiff had lied on her resume, she would have never been hired or she would have been immediately terminated

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court enter Partial Summary Judgment in their favor and against Plaintiff as to Count III of the Complaint.

Respectfully Submitted,

/s/ Lawrence J. McGuinness
Fla. Bar No. 814611
ljmpalaw@netzero.com
scheduling_ljmpa@comcast.net
Juliana Gonzalez, Esq.
Fla. Bar No. 54660
juliana@ljmpalaw.com
office@ljmpalaw.com
McGuinness & Gonzalez, P.A.
3126 Center Street
Coconut Grove, FL 33133
Tel. (305) 448-9557
Fax. (305) 448-9559

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF; and that the foregoing document is served on this 1st day of September, 2017, to all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of the notices of Electronic Filing generated by the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      Respectfully Submitted,

/s/ Lawrence J. McGuinness
Fla. Bar No. 814611
*ljmpalaw@netzero.com*
*scheduling_ljmpa@comcast.net*
Juliana Gonzalez, Esq.
Fla. Bar No. 54660
*juliana@ljmpalaw.com*
*office@ljmpalaw.com*
McGuinness & Gonzalez, P.A.
3126 Center Street
Coconut Grove, FL 33133
Tel. (305) 448-9557
Fax. (305) 448-9559

*Counsel for Defendants*

**SERVICE LIST**

Eddy O. Marban Esq.
The Law Offices of Eddy O. Marban
2655 S. Le Jeune Road, Suite 804
Coral Gables, FL 33134
Tel. (305 ) 448-9292
Fax. (305) 448-9477
*marbanlaw@gmail.com*

*Counsel for Plaintiff*
*Service via CM/ECF*