UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-25291-Civ-TORRES

DENISE PINEDA, and others
similarly-situated,

    Plaintiff,

v.

PESCATLANTIC GROUP, LLC, a Florida
limited liability company, and CESAR CALVO,
individually,

    Defendants.

_____/

**ORDER ON DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Pescatlantic Group, LLC's ("Pescatlantic") and Cesar Calvo's ("Mr. Calvo") (collectively, "Defendants") motion for summary judgment against Denise Pineda ("Plaintiff"). [D.E. 36]. Plaintiff responded to Defendants' motion on September 18, 2017 [D.E. 40] to which Defendants replied on September 25, 2017. [D.E. 41]. Therefore, Defendants' motion is now ripe for disposition. After careful review of the motion, response, reply, relevant authority, and for the reasons discussed below, Defendants' motion is **DENIED**.[1]

*I. BACKGROUND*

Pescatlantic employed Plaintiff from March 2016 through October 28, 2016 as a logistic coordinator and compensated her at a rate of $1,375 every two weeks

---

[1] On June 7, 2018, the parties consented to the undersigned Magistrate Judge's jurisdiction.

1

during her 90-day probationary period. After her probationary period, Plaintiff demanded and was granted a raise in her salary. On the morning of October 28, 2016, Plaintiff alleges that she met with Mr. Calvo to discuss a potential change in the law with respect to a Department of Labor regulation. Plaintiff claims that Mr. Calvo did not care about the changes, but wanted to make clear that Defendants were not going to pay Plaintiff for any overtime work going forward. Plaintiff then told Mr. Calvo that she was not compensated in the past for overtime work and refused to work overtime without compensation going forward. Because Plaintiff refused to work for free and complained about the lack of compensation for overtime pay, Plaintiff alleges that she was terminated.

Defendants dispute Plaintiff's allegations and claim that Plaintiff voluntarily resigned following her meeting with Mr. Calvo because she was asked to cease her excessive use of her cell phone during business hours. Defendants also suggest that, even if Plaintiff had not voluntarily left her job, they had valid non-discriminatory reasons for terminating Plaintiff's employment – namely her excessive use of her cell phone for personal calls during business hours. Pescatlantic contends that it had a policy against employees using their cell phones during business hours other than for the use of emergencies.[2] After Plaintiff was terminated, it became known that she lied on her resume about acquiring a high school diploma. Defendants claim that, if they had known of Plaintiff's

---

[2] Plaintiff alleges that she only received a copy of these polices at the end of her employment.

2

misrepresentation, they would have never hired Plaintiff and/or fired her immediately.

Subsequent to her departure, Plaintiff filed a three-count complaint in Florida state court alleging (1) an unpaid overtime wage claim against Pescatlantic, (2) an unpaid overtime wage claim against Mr. Calvo, and (3) a retaliation against both Defendants. On December 21, 2016, Defendants removed this action to federal court on the basis of federal question jurisdiction. [D.E. 1]. Plaintiff seeks money damages for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and damages for unlawful retaliatory termination in violation of 29 U.S.C. § 215(a)(3).

## II. APPLICABLE PRINCIPLES AND LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56 (c)(1). "On summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (quoting another source).

In opposing a motion for summary judgment, the nonmoving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The existence of a mere "scintilla" of evidence in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, or upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996) (citing *Matsushita*, 475 U.S. at 592–94)).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *See id.* at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

4

## III. ANALYSIS

The gist of this case is that Plaintiff complained about the lack of overtime pay and refused to continue working overtime without compensation going forward. As a result, Defendants fired Plaintiff and she filed suit for retaliatory termination. Defendants argue, however, that the facts – even when viewed in the light most favorable to Plaintiff – are insufficient as a matter of law and that they are entitled to partial summary judgment. We will discuss the parties' arguments in turn.

### A. *Retaliatory Termination under the FLSA*

The FLSA makes it unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the FLSA. 29 U.S.C. § 215(a)(3). In the Eleventh Circuit, retaliation claims under the FLSA are ordinarily analyzed under the burden-shifting framework employed by courts in cases brought under Title VII of the Civil Rights Act. Under this framework, the plaintiff must first establish a prima facie case of unlawful retaliation.

To establish a prima facie case of retaliation under the FLSA, a plaintiff must demonstrate that "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1343 (11th Cir. 2000) (quoting *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 208–09 (10th Cir. 1997)). In demonstrating causation, a plaintiff must

prove that the adverse action would not have been taken "but for" the assertion of her FLSA rights. *See Reich v. Davis,* 50 F.3d 962, 965–66 (11th Cir. 1995).

The allocation of the parties' burdens in a retaliation case is akin to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This requires a plaintiff to "make out a case sufficient to withstand a motion for summary judgment." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1325 (11th Cir. 2011). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir. 1997). But, a plaintiff "cannot rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case and respond sufficiently to any rebuttal by the defendant to create a genuine issue of material fact." *Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1391 (11th Cir. 1983). This means that personal opinions and conclusory allegations are insufficient to withstand a motion for summary judgment. *See Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1365 (M.D. Fla. 2001).

Once this presumption is satisfied, the "burden then shifts to the employer to rebut this presumption by producing evidence that its action was taken for some legitimate, non-discriminatory reason." *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (citation omitted). In cases where "the defendant has rebutted with a proffer of legitimate, nondiscriminatory reasons for the discharge, a genuine issue of material fact is not automatically presented." *Pace*,

701 F.2d at 1391. In other words, if a defendant meets its burden then "the presumption of discrimination is rebutted and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *Id.* (citation omitted).

This leads to the final step where the plaintiff must proffer sufficient evidence to create a genuine issue of material fact that the defendant's articulated reasons were pretextual. *See Crawford v. Carroll,* 529 F.3d 961, 976 (11th Cir. 2008); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To demonstrate that a defendant's actions were pretextual, a plaintiff "must reveal' such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Cooper v. Southern Co.,* 390 F.3d 695, 725 (11th Cir. 2004) (quoting *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)). A reason is not pretextual for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County,* 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." *Id.* (citation omitted).

Defendants advance several arguments in support of their motion for partial summary judgment. First, Defendants contend that Plaintiff cannot meet her

burden to establish a prima facie case of retaliation because Plaintiff complained only *after* her employment with Defendants had ended. Indeed, Defendants contend that Plaintiff only complained to Defendants *once* via email and that email was sent to Defendants after she was no longer employed with the company. This means that, even if Plaintiff's sole complaint raises to the level of protective activity (which Defendants dispute), Plaintiff cannot prove that she suffered an adverse employment action as a result of a complaint that was lodged *after* she was no longer working for the company.

Assuming that Plaintiff can establish a prima facie case for retaliation, Defendants argue that they are still entitled to partial summary judgment because they have produced overwhelming evidence that Plaintiff was terminated for legitimate non-discriminatory reasons.[3] For example, Defendants claim that if Plaintiff had not left voluntarily, she would have been terminated because of her insubordination and excessive personal use of her cell phone during regular business hours. Defendants further argue that Plaintiff has a history of insubordination and that her supervisor at the time, Nilma Labrada ("Mrs. Labrada"), was already frustrated with Plaintiff's refusal to follow instructions. For instance, on July 14, 2016, Mrs. Labrada sought assistance from Mr. Calvo in how to work with Plaintiff:

> Cesar, I have reached my limit in giving instructions to Denise and for her to believe that she does not have to comply [with them]. I just told her that I spoke with you and that once she enters her information for intake status, then I can input my part and then I will save it in

---

[3] Defendants claim that Plaintiff voluntarily resigned whereas Plaintiff alleges that Defendants terminated her.

8

> private for you, your father and myself. She told me that you are the only one who can give her instructions. It seems that she is forgetting that I am indeed her supervisor. I leave it in your hands to make her understand.

[D.E. 36-8].

Defendants also claim that Plaintiff's use of her cell phone for personal reasons during business hours is another nondiscriminatory reason for her alleged termination. Defendants reference an email that Plaintiff sent on June 3, 2016 where she allegedly concedes that the use of her cell phone has been an issue in the work environment:

> Cesar, Nilma informed me that you do not want me using the phone to avoid errors. Me using the phone doesn't interfere with my work and doesn't cause me to commit errors. My son is in an extremely delicate stage right now, I honestly shouldn't even be here. If he or his father call me or text me, I will answer and respond. If this is an issue then please let me know and I will just go home to be with him instead.

[D.E. 36-9]. Because Plaintiff cannot establish a prima facie case of retaliation nor meet her burdens under *McDonnell Douglas*, Defendants conclude that they are entitled to partial summary judgment.

### B. *Whether McDonnell Douglas Applies to this Case*

The first issue to resolve is whether the burden shifting framework set forth in *McDonnell Douglas* applies to the facts of this case. Plaintiff argues that *McDonnell Douglas* does not apply and that Defendants' motion fails at the outset because there is no burden shifting necessary when there is direct evidence of discrimination. *See Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) ("Where direct evidence of discrimination is unavailable, a Title VII plaintiff

9

may nonetheless present circumstantial evidence of discrimination sufficient to create a jury question."); *Denney v. City of Albany*, 247 F.3d 1172, 1182–83 (11th Cir. 2001) ("Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar *McDonnell Douglas* paradigm for circumstantial evidence claims.").

Specifically, Plaintiff claims that there is direct evidence of discrimination because Mr. Calvo allegedly told Plaintiff on her final day of work that – if she was unwilling to work without overtime pay – she would be terminated:

> Q Okay. As a result of that, what did you say back to him?
> A I told him it was illegal for him to have me work without overtime pay.
> Q Okay. What happened after that?
> A He told me that if I wasn't willing to work without overtime pay, that he would let me go.
> Q Okay. Did you say anything back to him?
> A Yes, I told him then I guess I have no other choice because I wasn't going to do it.
> Q You weren't going to do what?
> A I wasn't going to work for free on my extra time for free.

[D.E. 36-2]. Because Mr. Calvo's statement constitutes direct evidence, Plaintiff concludes (1) that the *McDonnell Douglas* burden shifting analysis need not apply, and (2) that this case must proceed to trial because there are genuine issues of fact regarding Plaintiff's termination.

Defendants take issue with Plaintiff's argument because her deposition testimony is implausible. Defendants contend that Plaintiff's testimony is "simply incredible" in that a meeting occurred where Mr. Calvo stated that Plaintiff would not be compensated for future overtime work. Because Plaintiff has nothing more

10

than her own self-serving testimony, Defendants conclude that this is not a direct evidence case and that *McDonnell Douglas* applies.

Defendants' arguments are unpersuasive for at least two important reasons. First, Defendants' mere skepticism that Plaintiff's testimony is false does not undermine Plaintiff's position that she was terminated because she refused to work overtime without compensation. That is a credibility determination for a jury to decide. Second, *McDonnell Douglas* need not apply to the facts of this case because "[d]irect evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard v. A.B.E.L. Servs., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) (citing *Carter v. City of Miami,* 870 F.2d 578, 580–81 (11th Cir. 1989)). In other words, direct evidence is sufficient to bypass summary judgment because it provides sufficient evidence to prove that a defendant's decision was more probably than not based on illegal discrimination.

Defendants suggest that a direct evidence case occurs only when a decisionmaker provides testimony that he took an adverse employment action against a plaintiff on the basis of a protected personal characteristic. But, the Eleventh Circuit's decision in *Wright v. Southland*, 187 F.3d 1287 (11th Cir. 1999)*,* forecloses that argument entirely. In *Wright,* the Court considered the dictionary definition of direct evidence that Defendants advocate for here and rejected it in favor of a preponderance definition which considers "a causal link between an adverse employment action and a protected personal characteristic." *Id.* at 1293.

As support, the Eleventh Circuit relied on a plethora of cases where plaintiffs had direct evidence of discrimination based solely on their deposition testimony that a defendant discriminated against them. For example, in *Taylor v. Runyon,* 175 F.3d 861 (11th Cir. 1999), the plaintiff alleged that she was denied a promotion on the basis of her sex. The plaintiff testified that the decisionmaker told her that she was not promoted because the male with whom she was competing (and who ultimately received the position) had a wife and children and therefore needed the money more than the plaintiff. The Eleventh Circuit concluded that plaintiff's testimony constituted direct evidence of sex discrimination under the preponderance definition of direct evidence. *See id.* at 867.

The Eleventh Circuit reached the same conclusion in *Caban-Wheeler v. Elsea,* 904 F.2d 1549 (11th Cir. 1990), where a Hispanic director of a local government program alleged that she was terminated because of her race. The Court held that the plaintiff's testimony – that the employer said he "needed a black director" – constituted direct evidence of employment discrimination because the employer's statement could have led a trier of fact to conclude that the employer more probably than not fired the plaintiff because of her race. *Id.* at 1555.

The same reasoning applies to the facts of this case. Here, we have a plaintiff who claims that she told her employer that she would not work overtime without being paid and, in turn, the employer immediately terminated her. The facts of this case fit squarely into the preponderance definition of direct evidence because a reasonable trier of fact could find, more probably than not, that there is a causal

link between Plaintiff's refusal to work overtime without compensation and her immediate termination. Therefore, *McDonnell Douglas* need not apply in this case because Plaintiff has presented direct evidence that there is a genuine issue of material fact on the cause of her termination. Because we find that Plaintiff's testimony presents an issue of fact, Defendants' singular reliance on an email that arguably post-dated her termination is inconsequential.

Having found that Plaintiff has shown that this is a direct evidence case based on her testimony that Mr. Calvo terminated her for refusing to work overtime without compensation, we conclude there is a genuine issue of material fact as to the cause of Plaintiff's termination. The issue of fact turns on a credibility determination that can only be made at trial, and therefore the entry of partial summary judgment on Plaintiff's retaliatory termination claim must be **DENIED**.

### C. *Whether After-Acquired Evidence Limits Plaintiff's Damages*

Defendants' final argument is that Florida adheres to the after-acquired evidence doctrine to limit damages in discrimination/retaliation cases and that this should be considered because there is no dispute that Plaintiff lied to her employer that she had a high school diploma. Under this doctrine, evidence discovered subsequent to the alleged discrimination which would have led to the employee's immediate termination, is considered by the court in calculating a plaintiff's damages. "If a court finds that the after-acquired evidence would have led to the plaintiff-employee's immediate dismissal, then the plaintiff may no longer recover front-pay and may not be reinstated to the former position. In such a situation, a

court will also calculate backpay by setting the beginning point for backpay as the date of the alleged discriminatory event and setting the end point on the *date* that the after-acquired evidence was discovered by the employer." *Cook v. Shaw Indus.*, 953 F. Supp. 379, 384–85 (M.D. Ala. 1996) (internal citations omitted).

Plaintiff contends that Defendants failed to plead the after-acquired evidence doctrine as an affirmative defense and cannot raise it at the summary judgment stage because it constitutes a waiver. Plaintiff also argues that Defendants failed to cite any authority where the after-acquired evidence doctrine applies in a FLSA case. Therefore, Plaintiff suggests that the after-acquired evidence doctrine is irrelevant to the facts of this case and should not be considered.

We find that Defendants' argument is premature because we need not determine on a motion for summary judgment whether the after-acquired evidence doctrine limits Plaintiff's damages. While Plaintiff argues that the failure to plead the after-acquired evidence doctrine constitutes a waiver, the omission of an affirmative defense "is not fatal as long as it is included in the pretrial order." *Pulliam v. Tallapoosa Cty. Jail*, 185 F.3d 1182, 1185 (11th Cir. 1999) (citing *Hargett v. Valley Fed. Sav. Bank,* 60 F.3d 754, 763 (11th Cir.1995) (stating that failure to assert affirmative defense in answer curable by insertion of defense in pretrial order); Fed. R. Civ. P. 16(e) (stating that pretrial order "shall control the subsequent course of action")). Given the procedural posture of this case, we prefer to decide this issue at a time closer to trial. Therefore, Defendants' motion to limit Plaintiff's

14

damages under the after-acquired evidence doctrine is **DENIED** with leave to renew prior to trial.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants' motion for partial summary judgment [D.E. 79] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of July, 2018.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge