**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 16-25291-CIV-TORRES

CONSENT CASE[1]

DENISE PINEDA,

        Plaintiff,

vs.

PESCATLANTIC GROUP, LLC,
and CESAR CALVO,

        Defendants.

_____/

## DEFENDANTS' JOINT RESPONSE TO MOTIONS FOR NEW TRIAL AND INCORPORATED MEMORANDUM OF LAW

The Defendants Pescatlantic Group, LLC (Pescatlantic) and Cesar Calvo (Calvo), by and through undersigned, responds to the motions for new trial filed by the Plaintiff Denise Pineda (Pineda) as follows:

Introduction:

The motion for new trial is organized in two parts: a motion under Rule 50(b) and another under Rule 59(a)(1)(A).

The first motion is in turn also made up of two parts: a renewal of the initial Rule 50(a) motion for judgment as a matter of law[2] and a second argument (in two parts) that is made now, after judgment, for the very first time.[3]

---

[1] The parties have stipulated to the full exercise of jurisdiction by the Honorable Edwin G. Torres, Magistrate Judge, to conduct any and all proceedings in this case, including trial.

[2] Pineda had initially sought a ruling that no reasonable jury would have a legally sufficient evidentiary basis to find that Pineda was exempt from the Fair Labor Standards Act as a managerial administrative employee.

In her second motion, under Rule 59, Pineda's several arguments do not follow the order announced by the subheadings. And occasionally they resurface later in the motion again. But it is possible to discern that Pineda:

- Repeats her allegations of violations of in limine rulings;[4]

- Tries to equate the use of the well-known idiom "wolf in sheep's clothing" with calling a defendant "an animal;"

- Accuses the court of deliberately harrying the jury into a making a "compromise verdict" so that the courthouse could close for the day; and

- Repeats her accusation that Calvo's testimony was coached.

Pineda also demands that the court should:

- Focus on cherry-picked passages from the transcript that she has taken entirely out of context but that still do not support her arguments;

- Ignore her failures to support her assertions and arguments with references to the record;

- Ignore her failures to object and her tactical waivers of objections;

- Disregard all evidence in the record that support the defenses and contradict Pineda's claims; and

- "[V]indicate the court's authority" by overturning the Jury's verdict.

---

[3] The second argument alleges violations of in limine rulings and accuses the Defendants' legal counsel of having coached a witness! Beside the fact that both are patently false, neither argument was made in the Rule 50(a) motion. Contrary to the requirements that Pineda herself cites in her motion at page 8, the second argument is not based upon anything near the same or similar grounds as the original request.

[4] This time, although still spurious, the allegations are at least raised in the proper motion.

Finally, Pineda repeats her assertion that Walter Gonzalez's impeachment testimony should not have been allowed and falsely accuses the Defendant of having called her a "bad mother."

<u>The Plaintiff failed to meet her burdens under Rule 50(b)—both substantively and procedurally:</u>

Although Pineda herself correctly points out in her motion that a Rule 50(a) motion "must specify … the law and the facts that entitle the movant to judgment" (citing to Rule 50(b) and to *Howard v. Walgreen Co.*, 605 F.3d 1239, 1243 (11th Cir. 2010)), and although she supplies a transcript of her entire Rule 50(a) motion as "Exhibit C" [DE 93-3] to her Rule 50(b) motion, she fails to recognize that her motion was inadequate in both regards. Pineda's Rule 50(a) motion was deficient in that she failed to specify any law that would entitle her to judgment and in that the evidence that she argued was missing to support the exemption defense had indeed been presented and was not at all missing. In fact, Pineda makes the Defendants' case for them at pages 3 and 10 of her Rule 50(b) motion.

In her written motion, Pineda admits that Calvo and Pescatlantic presented evidence that she: recommended and implemented a switch from one payroll system to another (p. 10), recommended the hiring of an Fattorney to draft employment documents for Pescatlantic (p. 10), created a logbook for salesmen (p. 3), purchased computers (p. 3), made collections from customers (p. 10), did the paperwork for shipments of fish that came in (p. 3), did the paperwork for the sale of the shipments (p. 3), paid bills (p. 10), booked trips (p. 3), and did other projects on the computer (p. 3).

Although Pineda did not attach the entire transcripts of all the trial proceedings, those portions of the record that she did attach also support the administrative managerial defense. In the interest of economy, those are not reproduced here. But they are incorporated herein and

made part hereof by way of this reference as if fully stated herein. They are more specifically found in Pineda's Exhibit A [DE 93-2, at pages 30-32, 38, 52-53, and 103-105, 129] and her Exhibit B [DE 93-1, at pages 124, 129, and 130-131]. And although Pineda would prefer if those portions were ignored, they are evidence and they support that there was enough of it there to send to the Jury for determination.

The question is not "whom does the court believe", nor "whom would the movant have the court believe". Rather the court "must *consider all the evidence in the light most favorable to* [*Calvo and Pescatlantic*] and determine 'whether or not reasonable *jurors* could have concluded as this jury did based on the evidence presented.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997). Pineda concedes that "[t]he court must affirm the jury verdict unless there is no legal basis upon which the jury could have found for Defendant on the administrative exemption." These are here own words. See the top of page 9 of her Rule 50(b) motion.

But then Pineda does not present the evidence presented. She does not provide the transcript of the proceedings. Instead she cherry-picks excerpts, places them out of context, and makes conclusory remarks without substantiating them with any references to the record.

Examples of that.

But even so, from the meager offerings from the transcript that are presented by Pineda the fact that there was more than a scintilla of evidence presented by the Defendants in support of the fact that Pineda was an administrative managerial employee has been shown above.

<u>The allegations of in limine violations were not raised in the initial Rule 50(a) motion:</u>

Rule 50(b) allows for the renewal of a Rule 50(a) motion. Pineda concedes that it "must be based upon the same or similar grounds as the original request for judgment as a matter of law

made under Rule 50(a) at the close of evidence and prior to being submitted to the jury." See

Pineda's Rule 50(b) motion at page 8, where she cites to *Howard*, at 1243. The Eleventh District

has made abundantly clear that the rule exists to

> avoid making a trap of the motion for judgement notwithstanding the verdict, either at the trial stage or on appeal. When a claimed deficiency in the evidence is called to the attention of the trial judge and counsel before the jury has commenced deliberations, counsel still may do whatever can be done to mend the case. But if the court and counsel learn of such a claim for the first time after verdict, both are ambushed and nothing can be done except by way of a complete new trial. It is contrary to the spirit of our procedures to permit counsel to be sandbagged by such tactics or the trial court to be so put in error.

*Howard*, at 1243 (quoting *National Industries, Inc. v. Sharon Steel Corp.*, 781 F.2d 1545 (11th

Cir. 1986). The purpose of the requirement is to protect the non-movant from unfair surprise and

the trial court from being put in error without first providing both an opportunity to undertake

curative measures. Although no such measures were in this instance needed, because no

violations of any in limine rulings actually took place, as will be shown below, Pineda's attempt

to raise the allegations that the court's in limine rulings were violated by Pescatlantic and Calvo

in this her Rule 50(b) motion for the very first time (which, even if true, would still not be related

even remotely to the previously made argument that the Defendants presented no evidence

whatsoever to support their administrative managerial exemption defense) without ever having

raised this issue in her Rule 50(a) motion, renders the argument wholly improper and raises a

bona fide issue as to whether the motion is frivolous.

This is even more so apparent in light of the fact that Pineda knows, or should know, the

aforementioned requirements for a Rule 50(b) motion to be proper. She cited in her motion to

that very page of the *Howard* opinion whence the above quote is taken. Nevertheless, she fails to

provide this court with a single argument for why she should be excused from strict enforcement

of Rule 51(a)'s specificity requirement under the particular circumstances of the case. It would

therefore be reasonable to presume either that she has no valid reason to be so excused or that she waived her opportunity to provide a reason for that, just as she had waived the opportunity she had had to raise the issue when she made her Rule 50(a) motion. In fact, the transcript shows that before denying the Rule 50(a) motion, the court even asked Pineda whether she had "[a]ny other motions?" Her answer was: "That's it. I'm sorry." The court did not deny the motion until after giving Pineda the opportunity to raise the very issues she now brings for the first time. [DE 93-3; p.3, Ls.15-18].

Pineda's allegations of in limine violations in her Rule 50(b) motion is devoid of a proper basis. The second part of the Rule 50(b) motion should therefore too be denied.

<u>There were no violations of any in limine rulings:</u>

There were no violations of any in limine rulings. Pineda alleges that the Defendants violated the court's in limine rulings by: (1) inquiring into Pineda's history of applying for work at the Pink Pony, BT's Gentlemen's Club, and other "gentlemen's clubs," (2) by way of Calvo's testimony that he will check in the future whether prospective employees have sued their employers in the past, and (3) by use of the well-known idiom "wolf in sheep's clothing," which Pineda equates to calling her an "animal," a "bad person," and a "bad mother" without explaining how she makes that translation.

First, Pineda admits that she opened the door to inquiry into her history of applying for work at the Pink Pony, BT's Gentlemen's Club, and other "gentlemen's clubs," when she introduced her job search log. See her motion at p. 8 and FN 3. And she does not explain how the fact that she opened the door is not a waiver of the in limine ruling and an invitation to the

Defendants to inquire into the subject. Nevertheless, she accuses the Defendants of violating the court's rulings. But there is no such thing—not after she opened the door.

Second, Pineda admits that *for tactical reasons* she made the *deliberate choice* not to object when Calvo testified that he will check in the future whether prospective employees have sued their employers in the past. She admits the same for several other instances where things were said that she now complains about for the first time in her motions when she could have objected contemporaneously but chose to be silent. See her motion at FNs 7 and 8 and pp. 15, 16, and 18 et seq. Still, she seeks to eat her cake and have it too. But, just as "[a] motion for reconsideration does not operate like a golfer's mulligan, giving the invoking party a chance to redo what it now wishes it had done differently," neither does a Rule 59 motion for new trial. See *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

Pineda's reliance on *McWhorter v City of Birmingham*, 906 F.2d 674 (11th Cir. 2009) is inapposite. In that case the Eleventh Circuit upheld *the granting* of a motion for new trial even though the movant had failed to object because it reviewed under an abuse of discretion standard and found no abuse. But in that case the grounds were different than those alleged here (which even so did not constitute a violation). In *McWhorter*, the court had prohibited the mention of a lawsuit. In closing arguments, McWhorter's attorney not only mentioned the lawsuit, but he pinned his entire winning theory on that lawsuit and urged the jury to examine the excluded exhibit, which was the complaint from the excluded lawsuit. *McWhorter*, at 678. Moreover, the jury then demanded to see the excluded exhibit. Ibid. Without that demand, there would have been no evidence that the jury's "calm and dispassionate consideration of the case…" had been "impaired" by the "misconduct of counsel." See *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1474 (11th Cir. 1992). Although Pineda conjectures that because "[t]he

- 7 -

defense did not address the Exhibit 8 email [from Pineda to Calvo, where she made a bunch of self-serving remarks to him after she had walked off the job]…" "[t]he jury could only find against Plaintiff based on passion and emotion, and not the facts of this case," at page 16 of her motion, she does not explain how one follows the other, nor does she present any evidence whatsoever coming from the Jury as to what their motivation may have been. *McWhorter* is inapplicable to this lawsuit.

Pineda presents no legal authority why the court should grant the motion. Instead of McWhorter, Pineda should have presented some case where the denial of a motion for new trial on the basis of a failure to object under circumstances similar to those in this lawsuit was reversed. Presumably there are none. Pineda also does not show how any harm may have come about when Calvo testified that he will check in the future whether prospective employees have sued their employers in the past. The in limine ruling had been that "[i]f the Defendants wish to introduce evidence of *Plaintiff's prior FLSA lawsuits*, Defendants must explain…." But Calvo never testified about Pineda's prior FLSA lawsuits, he only said that he will change certain procedures when hiring in the future. See pages 6 and 7 of Pineda's motion, where she quotes Calvo and his counsel. That is not a violation of the in limine ruling.

But even if it were, Pineda still fails to show how the alleged violation affected her substantial rights, how its flavor permeated the entire proceeding, how that permeation provides the conviction that the jury was influenced by passion and prejudice in reaching its verdict, or how the interests of substantial justice are at stake. But she is required to show that, if she is to carry her burden on a Rule 59 motion. And Pineda knows this. She cites all those requirements at pages 15 and 16 of her motion. But then she neglects actually to show how they are met. Instead she merely announces that they are.

Pineda does not carry her burden to show why her failure to object should be excused. She failed to carry her burden with this allegation that there were in limine violations that justify a new trial too.

Third, Pineda does not make a single reference to the record where she objected to the Defendants' use of the well-known idiom "wolf in sheep's clothing" or where the Defendants actually called Pineda an "animal," a "bad person" or a "bad mother." A thorough search of the portions of record that Pineda did provide reveals that none of those events ever occurred. Pineda never objected to the use of the idiom "wolf in sheep's clothing." The Defendants never called Pineda "an animal." They never called her "a bad mother." They never called her "a bad person." The only reference to Pineda as "a bad person" is by her own counsel in her closing argument. He said: "The defendant is hoping that some of you might be prejudiced and think that, oh, she's a bad person." Pineda's Exhibit B [DE 93-2, p. 130, Ls. 19-20]. Then he did it again at the end of his closing argument and left the jury with the following thoughts: "opposing counsel said she's a bad person. You should rule against her based on emotion. Forget about the evidence. You should rule against her because she applied at an adult entertainment club when she was out of a job, and she told you she prefers to do that rather than leave her children.  He's trying to say she's a bad person. Don't rule against her." [DE 93-2, pp. 171-172, Ls. 24-5]. By contrast, the record does not reveal that the Defendants even uttered the words "bad" and "person" in the same sentence during the proceedings.

Moreover, every one of the five cases cited by Pineda at page 17 of her motion in support of her contention that the use of the phrase "wolf in sheep's clothing" is impermissible are cases where the courts ruled the use of whatever was there the offending phrase to be insufficient grounds for reversal. Pineda does not present a single case where the use of the much worse

phrases that she would have this court believe are the same as "wolf in sheep's clothing" resulted in a new trial. And that is so even though she claims that "there are numerous decisions involving requests for new trial when a party argues that the other party should be regarded as a 'wolf in sheep's clothing.'" Which of those numerous cases resulted in a new trial on that basis?

If anyone violated the in limine prohibition against calling Pineda a "bad person," it was not the Defendants.


    <u>The accusations against the court and Calvo's counsel are not the product of reason:</u>

Pineda's accusation against the court that it deliberately harried the jury so as to be able to close the courthouse for the day and her accusations that Calvo's testimony was coached are not supported with one iota of evidence nor by any rational argument.


    <u>Pineda waived her objections against Walter Gonzalez's impeachment testimony:</u>

Pineda complains that Walter Gonzalez was an undisclosed witness. But fails to recognize that impeachment and rebuttal witnesses are seldom known in advance and the failure to disclose them is not a violation of any kind.


    **WHEREFORE** it is requested that the Plaintiff's motion for new trial be denied.

Dated: January 3, 2019               Respectfully submitted,

                                    s/Darius Asly                    
                                    Darius Asly, Fla. Bar No. 83999
                                    *Limited Attorney for the Defendants*
                                    3500 Flamingo Dr, Miami Beach, FL 33140
                                    (305) 906-6000, (305) 672-3400 fax
                                    da@aslylaw.com

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF and email on January 3, 2019 on all counsel or parties of record on the Service List below.

s/Darius Asly

Darius Asly

**Service List**

Attorney Edilberto O. Marban
*Counsel for the Defendants*
The Law Offices of Eddy O. Marban
2655 S Le Jeune Rd, Ste 804
Coral Gables, FL 33134
(305) 448-9292
(305) 309-9978 fax
em@eddymarbanlaw.com

Attorney German Morales and
Attorney Glenn R. Goldstein
*Counsel for the Defendants*
Morales, Goldstein, & Barducci, PLLC
150 SE 2nd Ave, Ste 805
Miami, FL 33131
(561) 573-2106
(954) 374-1111
(305) 400-0722 fax
ggoldstein@g2legal.net
gmorales@lawgmorales.com