# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 16-25291-Civ-TORRES

DENISE PINEDA, and others
similarly-situated,

      Plaintiff,

v.

PESCATLANTIC GROUP, LLC,
a Florida limited liability company,
and CESAR CALVO, individually,

      Defendants.

_____/

## <u>ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL</u>

This matter is before the Court on Denise Pineda's ("Plaintiff") motion for a new trial on damages for her overtime claim and motion for new trial on her retaliation claim against Pescatlantic Group, LLC's ("Pescatlantic") and Cesar Calvo ("Mr. Calvo") (collectively, "Defendants"). [D.E. 93]. Defendants responded to Plaintiff's motion on January 3, 2019 [D.E. 95] to which Plaintiff replied on January 10, 2019. [D.E. 98]. Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, response, reply, and for the reasons discussed below, Plaintiff's motion is **DENIED**.

## I. BACKGROUND

Pescatlantic employed Plaintiff from March 2016 to October 28, 2016 as a logistic coordinator and compensated her at a rate of $1,375 every two weeks during

1

her 90-day probationary period.  After her probationary period concluded, Plaintiff demanded and was granted a raise in her salary.  On the morning of October 28, 2016, Plaintiff alleges that she met with Mr. Calvo to discuss a potential change in the law with respect to a Department of Labor regulation.  Plaintiff claims that Mr. Calvo did not care about the changes, but wanted to make clear that Defendants were not going to pay Plaintiff for any overtime work going forward.  Plaintiff then told Mr. Calvo that she was not compensated in the past for overtime work and refused to work overtime without compensation going forward.  Because Plaintiff refused to work for free and complained about the lack of compensation for overtime pay, Plaintiff alleges that she was terminated.

Defendants dispute Plaintiff's allegations and claim that Plaintiff voluntarily resigned following her meeting with Mr. Calvo because she was asked to cease her excessive use of her cell phone during business hours.  Defendants also suggest that, even if Plaintiff had not voluntarily left her job, they had valid non-discriminatory reasons for terminating Plaintiff's employment – namely her excessive use of her cell phone for personal calls during business hours. Pescatlantic contends that it had a policy against employees using their cell phones during business hours other than for the use of emergencies.[1]  After Plaintiff was terminated, it became known that she lied on her resume about acquiring a high school diploma.   Defendants claim that, if they had known of Plaintiff's

---

[1]    Plaintiff alleges that she only received a copy of these polices at the end of her employment.

2

misrepresentation, they would have never hired Plaintiff and/or fired her immediately.

After her departure, Plaintiff filed a three-count complaint in Florida state court alleging (1) an unpaid overtime wage claim against Pescatlantic, (2) an unpaid overtime wage claim against Mr. Calvo, and (3) a retaliation claim against both Defendants. On December 21, 2016, Defendants removed this action to federal court on the basis of federal question jurisdiction. [D.E. 1]. Plaintiff sought money damages for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and damages for unlawful retaliatory termination in violation of 29 U.S.C. § 215(a)(3).

After discovery, the case proceeded to a three-day jury trial in December 2018. After hearing all the evidence and the parties' arguments, the jury returned a verdict finding (1) that Plaintiff was exempt from the FLSA as an administrative employee, and (2) that Plaintiff failed to prove by the greater weight of the evidence that Defendants terminated Plaintiff because of her demand for overtime wages. The Court entered final judgment in favor of Defendants on December 18, 2018. [D.E. 92]. Plaintiff filed this motion for new trial on December 20, 2018. [D.E. 93].

## II.  ANALYSIS

Plaintiff seeks two forms of relief under the Federal Rules. First, Plaintiff effectively seeks judgment as a matter of law under Rule 50(b) on her overtime claim because Defendants failed to establish the administrative exemption defense

at trial.[2]  Second, Plaintiff requests a new trial on her retaliation claim under Rule 59 because Defendants intentionally violated several *in limine* rulings in the jury's presence when Defendants referenced her prior FLSA lawsuit and purportedly demeaned her during counsel's closing.  We will discuss the parties' arguments in turn.

### A.    *Rule 50(b) Motion for Judgment as a Matter of Law*

#### (1)    *Standard of Review*

Fed. R. Civ. P. 50 is the mechanism for a party to challenge the sufficiency of the evidence at and after the close of the case:

> (a)(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

---

[2]    Plaintiff styles her motion in this respect as a motion for new trial, but the relief requested – vacating the verdict on the exemption defense and scheduling a trial only on overtime damages – would only be possible if judgment as a matter of law was entered on Defendants' affirmative defense.  So we will re-style the motion as to this issue as a motion for judgment under Rule 50.

"The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion under 50(a)." *Chaney v. City of Orlando,* 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting 9A C. Wright and A. Miller, *Federal Prac. & Procedure* ⬜ 2537 (2d ed. 1995)); *see also Nebula Glass Int'l, Inc. v. Reichhold, Inc.,* 454 F.3d 1203, 1210 (11th Cir. 2006).   Further, "any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based on the same grounds as the original request for judgment as a matter of law prior to the case being submitted to the jury." *Chaney,* 483 F.3d at 1227 (quoting *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004)).

Thus, under both Rule 50(a) and 50(b), a moving party must meet a heavy burden to prevail on a motion for judgment as a matter of law.   The standard of review for a district court to grant the motion is whether, "when the facts and inferences are viewed in the light most favorable to the opposing party, they 'point so strongly and overwhelmingly in favor of one party the Court believes that reasonable men could not arrive at a contrary verdict.'"   *United States v. Vahlco Corp.,* 720 F.2d 885, 889 (11th Cir. 1983) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969)).   The court must "affirm the jury verdict unless there is no legal basis upon which the jury could have found for [the defendants]."   *Telecom Tech. Servs., Inc. v. Rolm Co.,* 388 F.3d 820, 830 (11th Cir. 2004); *see also Robbins v.*

5

*Koger Props., Inc.,* 116 F. 3d 1441 (11th Cir. 1997) ("A mere scintilla of evidence is not sufficient to support a jury verdict.").

While the court must afford due deference to the jury's findings, it is axiomatic that such findings are not automatically insulated from review even following the jury's careful and conscientious deliberation. *See Johnson v. Clark*, 484 F. Supp. 2d 1242, 1245-46 (M.D. Fla. 2007). Rule 50 allows the trial court to remove issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Id.* (citations omitted). Accordingly, if Defendants did not provide a legally sufficient evidentiary basis for a reasonable jury to find in their favor on their defense, we must grant Plaintiff's Rule 50(b) motion for judgment as a matter of law. *See Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272, 1278 (11th Cir. 2005) (citing *Cleveland v. Home Shopping Network, Inc.*, 369 F.2d 1189, 1192 (11th Cir. 2004)).

On the other hand, we must deny Plaintiff's motion for judgment as a matter of law if Defendants presented "enough evidence to create a substantial conflict in the evidence on an essential element" of their defenses. *Pickett*, 420 F.3d at 1278 (citing *Bogle v. Orange County Board of County Comm'rs,* 162 F.3d 653, 659 (11th Cir. 1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law . . . the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim.")). To that end, we note that it is not the function of the Court to make credibility or factual

6

determinations under the guise of Rule 50 review.  *See, e.g., Jackson v. State of Alabama State Tenure Comm'n,* 405 F.3d 1276, 1281 (11th Cir. 2005).  If there are conflicting inferences that can be drawn from that evidence, it is not the Court's role to pick the better one.  Instead, all reasonable inferences from the evidence must be drawn in the prevailing party's favor.  *Id.; see also Daniels v. Twin Oaks Nursing Home,* 692 F.2d 1321, 1325 (11th Cir. 1982) (quoting *Continental Ore Co. v. Union Carbide Corp.*, 370 U.S. 690, 696 (1962) (finding that a court is a court is "bound to view the evidence in the light most favorable to [Defendants] and to give [them] the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn.")).

### (2)    Rule 50 Analysis

Plaintiff argues that she is entitled to judgment as a matter of law on her overtime claim because Defendants failed to satisfy the elements of their affirmative defense founded on the administrative exemption.  The jury found that, to the contrary, Defendants had established the elements of that defense in accordance with the Court's jury instructions.[3]  Plaintiff claims, however, that no reasonable jury could have reached that conclusion based on the evidence presented at trial.

---

[3]    There is no challenge to the Court's jury instruction on this affirmative defense.  Indeed, the parties agreed to the material terms of the instructions at the charge conference.

For the administrative exemption to apply, an employee must (1) earn no less than $455 per week, (2) have primary duties that involve "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) exercise "discretion and independent judgment with respect to matters of significance" in performing his or her primary duties. 29 C.F.R. § 541.200(a)(1)–(3).

Plaintiff claims that there is no dispute that she earned more than $455 per week and that the first prong of the administrative exemption test is not in dispute. Plaintiff argues, however, that Defendants failed to meet the second prong because there is no evidence that she performed any managerial duties. Instead, Plaintiff compares the work that she performed to that of an employee in a production line. Plaintiff relies, in part, on the testimony of Mr. Calvo where he stated that Plaintiff's responsibilities included booking trips, arranging Uber transportations, shipping orders, and receiving confirmations. As such, Plaintiff argues that Defendants cannot meet the second prong of the administrative exemption test.

As for the third prong, Plaintiff claims that Defendants presented no evidence that she had any discretion or independent judgment in her job duties. That is, Plaintiff alleges that there is nothing in the record to find that she could make independent choices free from supervision. Because the second and third prongs of the administrative exemption test have not been met, Plaintiff concludes

that the Court should enter judgment in her favor and order a new trial "on damages."[4]

The parties and the Court agree that the first prong of the administrative exemption test has been met. So we turn to the second prong of the administrative exemption test and inquire whether Plaintiff's primary duties relate to the management or general business operations of her employer. To meet this requirement, the employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id.* § 541.201(a). "The term 'primary duty' means the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). "Of course, merely having the title 'manager' is not talismanic, and the Court must still engage in a fact-specific inquiry to determine whether Plaintiff's most critical duties to the enterprise were his exempt managerial duties." *Rutenberg v. Boynton Carolina Ale House, LLC,* 2010 WL 135100, at *3 (S.D. Fla. Jan. 8, 2010) (citing *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1264 (11th Cir. 2008) ("When it comes to deciding whether an employee is an executive within the meaning of the FLSA, the answer is in the details.")).

---

[4]    Technically, the jury never found that Plaintiff worked more than 40 hours per work week. If a new trial was ordered, it would be on Plaintiff's overtime claim as to both liability and damages.

In determining an employee's primary duty, there are several factors to consider:

> [T]he relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1303 (11th Cir. 2009) (citing 29 § C.F.R. 541.700). More specifically, work that is directly related to management or general business operations includes, but is not limited to, work in functional areas, includes:

> [F]inance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

*Ramsey v. Wallace Elec.* Co., 2015 WL 1413331, at *4 (N.D. Ga. Mar. 27, 2015) (quoting 29 C.F.R. § 541.201(b)); *see also Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 693 (4th Cir. 2009) (enumerating the functional areas for general business operations).

Plaintiff maintains that there is not a "scintilla" of evidence in the record for the jury to conclude that she performed any managerial duties. Plaintiff overlooks the fact that her duties may be related to management *or* general business operations in order to trigger the administrative exemption. And the record shows that Plaintiff fits within several of the categories set forth above because she (1)

10

implemented a switch of one payroll system to another, (2) recommended the hiring of an attorney to draft employment documents for the company, (3) created a logbook for salesmen, (4) purchased computers, (5) made collections from customers, (6) completed paperwork for shipments of fish, (7) paid bills, (8) booked trips, and (9) completed other computer projects.

Moreover, Mr. Calvo testified that one needed to be a manager to perform Plaintiff's duties:

> The Court: . . . Do you need to be a manager, from your point of view, to make a call to a customer related to an outstanding receivable?
> Mr. Calvo: In our business, yes.

[D.E. 92-3].

Plaintiff takes issue with Mr. Calvo's testimony but, as Mr. Calvo testified, he operated a small company with few employees and Plaintiff was responsible for running its general operations.  The jury could thus have concluded that, given the size of this small company, the work she performed was far more than line-level work and, instead, amounted to material operational control over critical aspects of the company's business.  *See, e.g., Rock v. Ray Anthony Int'l, LLC,* 380 F. App'x 875, 877 (11th Cir. 2010) (affirming trier of fact finding that second prong of administrative exemption met where, in essence, employee effectively managed a core department of the employer's business that was necessary to further its business operations); *Reyes v. Hollywood Woodwork, Inc.,* 360 F. Supp. 2d 1288, 1292 (S.D. Fla. 2005) (finding second prong of administrative exemption met where

11

employee principally involved in preparation of bids for woodworking business that was "an important part of general business operations necessary for the Defendants to obtain production work and sell their products.").

Indeed, even if more of her time was spent on non-administrative tasks, Plaintiff could still be exempt under the regulation where her administrative role constituted the primary value the employer placed on her work.  That is precisely what we have here.  Plaintiff's role as the one-person collection department for this small distributing company could clearly constitute administrative work that was her most valuable contribution, as Mr. Calvo's testimony supports:

> Q.  And isn't it true that part of Ms. Pineda's duties was to answer the phones?
> A.  She had many duties.
> Q.  But my question specifically, isn't it a fact that part of her duties was to answer the phones?
> A.  Yes.
> Q.  And she also made collections for Pescatlantic; isn't that correct?
> A.  She did collections, payables.
> Q.  Right.  And to the extent . . .  to the extent that she dealt with customers was to do collections; isn't that true?
> A.  She actually did collections.  She handled claims because she was in charge of talking to the customers.

[D.E. 93-2 at 47].

That is ample evidence that could support the jury's finding.  *See, e.g., Dalheim v. KDFW–TV,* 918 F.2d 1220, 1227 (5th Cir. 1990) ("the employee's primary duty is what she does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time"); *Brillas v. Bennett Auto Supply, Inc.,* 675 F. Supp. 2d 1164, 1168 (S.D. Fla.

2009) ("[N]umerous courts have held that when considering the question concerning whether management was an employee's 'primary duty,' a more useful question is whether or not the employee's managerial duties constituted the primary value the employer placed on the employee."); *Calvo v. B & R Supermarket, Inc.,* 63 F. Supp. 3d 1369, 1385 (S.D. Fla. 2014) (finding employee administratively exempt where "the record is undisputed that the primary value of Plaintiff's employment was its management component. Defendant considered Plaintiff part of its management team.").

Plaintiff is convinced that her responsibilities do not meet the second prong of the administrative exemption test, but this was ultimately a factual and credibility determination for the jury to decide.  That is, the jury was tasked with making a finding as to the duties Plaintiff performed and whether that went hand in hand with the management or general business operations of the company.  In reaching that decision a core credibility determination had to be made between the conflicting testimony of Mr. Calvo versus that of the Plaintiff.  The jury clearly found Mr. Calvo more credible on this very important point.  A Rule 50 motion cannot be used to undermine that finding. *See Lamonica v. Safe Hurricane Shutters, Inc.,* 711 F.3d 1299, 1312 (11th Cir. 2013) (on Rule 50 review "we will "disregard all evidence favorable to the moving party that the jury is not required to believe.") (affirming denial of Rule 50 motion following jury verdict finding in

13

plaintiff's favor in FLSA action as to both individual liability and number of overtime hours worked).

Moreover, the jury's credibility finding did not require the jurors to completely disregard Plaintiff's testimony.  As the standard instructions dictate, the jurors have the right to accept all, some, or none of a witness's testimony.   In Plaintiff's case, the jury could very well have accepted much of her testimony, which in turn led them to conclude that the administrative exemption applied.  That is the case because a plaintiff may want to aggrandize the amount of time she devoted to an employer, in an effort to maximize her overtime damages.  By doing so, however, she runs the risk that the jury might conclude that her role in the company was invaluable and quite extensive.  That finding falls squarely in line with Defendants' theory that she was single-handedly in charge of the marketing and collections functions of this small company.  And that is why she was working as many hours as she claimed to be working.

For instance, though the transcript of Ms. Pineda's testimony was not filed, the Court's notes of her testimony evidence that she claimed she was involved in almost all aspects of this company's operations.  For starters, she would contact the warehouse after a load of fish arrived, then she would contact the custom broker to get the paperwork going, then receive the broker's report, and the input that information into the system.   She would then turn around and prepare the customer's orders for the distribution of the load of fish.  Once that was done, she

14

was in charge of contacting the trucking companies that were being contracted to move the fish.  And she did all this for any of the shipments the company would receive on a weekly basis.

But wait, there is more.  Plaintiff admitted that when she started working at the company, the collections process was a mess.  She testified that, upon her arrival, she took on the task of fixing that process.  So her work then included the extensive time that was necessary to repeatedly communicate with all the company's customers to make sure payment was made.  As she put it, this would require her to "collect, collect, collect" or words to that effect.  Thus, this aspect of her testimony certainly falls in line with Mr. Calvo's testimony to the extent that he maintained that her work for the company was extensive and went far beyond the clerical/office work that Plaintiff's motion makes it out to be.  Again, the jury was entitled to pick and choose from the available testimony and decide what Plaintiff was in fact doing at and how important that work was in the overall operation of the company.  The jury obviously concluded that she became a central component of the management team, thus justifying the fixed salary she received from Defendant as an administratively exempt manager.  So, contrary to the thrust of Plaintiff's motion, she was doing a lot more than answering the phones.

As is often the case, the losing party at trial is looking at the evidence through rose-colored glasses.  Our task, however, is to review that same evidence differently; we are to draw reasonable inferences in favor of the prevailing party

and to defer to the credibility determinations of the fact finder.  In doing so, and upon considering the entire record, there was indeed ample evidence for the Defendants to meet the second prong of the administrative exemption test.  Plaintiff has not persuaded us that reasonable jurors could not have reached that conclusion. *See also Burton v. Appriss, Inc.,* 682 F. App'x 423, 427-28 (6th Cir. 2017) (affirming judgment finding account manager of software services company administratively exempt where her primary duty was managing relations with, supporting, servicing, and liaising with, existing clients regarding their computer software needs).

Moving on to the third prong of the administrative exemption test, we must look to whether the employee's primary duties involve "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a)(3).  "The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises." *Id.* at § 541.202(b).  Some of the factors to consider when determining whether an employee exercises discretion and independent judgment are "whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business" and "whether the employee provides consultation or expert advice to management."  29 CFR § 541.202(b).  The ultimate question is whether the employee has the ability "to make an independent choice,

16

free from immediate direction or supervision." *Id*. § 541.202(c). Although there is no requirement that the employee operate free from oversight, the employee's duties must involve "more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id*. § 541.202(e).

Based on the evidence we heard at trial and our review of the trial transcript, there is enough evidence in the record for a reasonable juror to conclude that Plaintiff's primary duties included independent judgment and discretion. Mr. Calvo testified, for example, that Plaintiff independently engaged in negotiations with respect to the purchasing of equipment for the company:

> Q. Did you ask her to do that or did she do that herself?
> A. She talked to a sales rep from Dell, and she came up to me and told me, Listen, I got you this, this, this, and this.
> Q. So she negotiated that on her own?
> A. So it was a deal, yes.

[D.E. 92-3 at 30-31]. Mr. Calvo then testified that Plaintiff exercised independent judgment with respect to the creation of a system in assisting sales representatives in their communications with customers:

> A. Oh, one more thing that I think is very important. She created a sheet where sales representatives will follow up with that sheet, with that report, will report of hers. So she said that the sales representative will be more focused on calling more customers and will know exactly what they are doing every day.
> Q. Did you ask her to do that?
> A. No.

17

*Id*. at 31.   Mr. Calvo further testified that Plaintiff created a logbook – including its rules and policies – to assist employees in the performance of their duties:

> Q. . . . And who created this logbook?
> A. Ms. Denise Pineda
> . . .
> Q. At any point in time did you ever direct Ms. Pineda to throw out the logbook?
> A. How would I do that? No.
> . . .
> Who was in charge of policing or checking the logbook? If you didn't who was?
> A. At that specific moment, she was in charge of it.

*Id*. at 53.

In fact, there is evidence in the record that Ms. Calvo did almost all things related to her employment by herself:

> Q. So did she go and ask permission when she was in charge of that collection to anybody in the company on a call-by-call basis, can I call this person?
> A. Never
> Q. Or did she take that upon herself?
> A. No. She took it upon herself, like she did all the things by herself.

*Id*. at 104.

We note that it is inconsequential that Plaintiff may have submitted some of her plans to Mr. Calvo before they were finalized because this does not disqualify an employee from the administrative exemption.   *See Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 664 (11th Cir. 2011) ("Though the record demonstrates that Viola was required to submit most of her plans to management before they were finalized, review of this kind does not disqualify an employee from the administrative exemption.") (citing 29 CFR § 541.202(c) (explaining that "[t]he

18

decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action" and may be "reviewed at a higher level")).

And, again, the jury was tasked with weighing this evidence juxtaposed against Plaintiff's testimony that she was merely following her employer's instructions on a regular basis.  The jury clearly credited Mr. Calvo's testimony rather than the Plaintiff's.  The jury found that she did in fact extensive independent judgment on a critical aspect of the employer's business.  That finding supports this verdict.  *See, e.g., Rock v. Ray Anthony,* 380 F. App'x at 880 (affirming trier of fact finding that employee exercised sufficient independent judgment to satisfy exemption; "Although reasonable minds could differ about the degree of discretion [she] exercised as a dispatcher, sufficient evidence exists in the record to support the district court's finding that [she] exercised discretion and independent judgment."); *Reyes v. Hollywood Woodwork,* 360 F. Supp. 2d at 1293  (finding independent judgment satisfied where "decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action"); *see also Burton v. Appriss,* 682 F. App'x at 431 (affirming judgment finding account manager of software services company administratively exempt where employee's discretionary authority in dealing with company accounts constituted decisions that significantly impacted the business' operations); *cf. Gonzalez v. Batmasian,* 734 F. App'x 677, 681 (11th Cir. 2018) ("this

case was "largely a 'he said, she said' trial." If the jury credited the testimonies of plaintiff Gonzalez and witness Baker, the jury could reasonably find that Gonzalez was not a manager or administrator, that she worked overtime hours for which she was not paid, and that the defendants knew about the unpaid overtime.") (affirming denial of motion for new trial following jury verdict in employee's favor in FLSA overtime action).

In sum, because there is sufficient evidence in the record to support the jury's finding that Plaintiff exercised discretion and business judgment, Plaintiff's motion to vacate the jury's verdict under Rule 50 is **DENIED**.  *See also P&k Rest. Enter., LLC v. Jackson,* 2019 WL 190804, at *3 (11th Cir. Jan. 15, 2019) (affirming denial of Rule 50 motion following jury verdict in plaintiff's favor where jury could have relied solely on employee's testimony that she was not on notice of employer's use of tip credit, notwithstanding substantial evidence to the contrary); *Powell v. Morton Plant Mease Health Care, Inc.,* 174 F. App'x 520, 522 (11th Cir. 2006) ("Although there was evidence that Powell's duties were in part supervisory, there was significant other evidence that she was primarily a kitchen worker. At most, there was competent evidence on both sides of this issue.") (affirming denial of Rule 50 motion following jury verdict finding that employee was not exempt).

**B.**     ___Rule 59 Motion for New Trial___

*(1)     Standard of Review*

Pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, a court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A party may seek a new trial by arguing that "the verdict is against the great weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S. Ct. 189, 85 L. Ed. 147 (1940); *Steger v. General Elec.* Co., 318 F.3d 1066, 1081 (11th Cir. 2003). However, a motion brought pursuant to Rule 59 may not "relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005) (motion to amend or alter judgment was essentially a motion to reconsider the district court's prior summary judgment order).

Resolution of a motion for a new trial is committed to the discretion of the trial court. *See Montgomery v. Noga*, 168 F.3d 1282, 1295 (11th Cir. 1999). When ruling on a motion for a new trial, the judge must determine "if in his opinion, 'the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the

21

direction of a verdict.'" *Insurance Co. of N. America v. Valente*, 933 F.2d 921, 922-23

(11th Cir. 1991) (quoting *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th

Cir. 1984)). "[T]o assure that the judge does not simply substitute his judgment for

that of the jury, . . . we have noted that new trials should not be granted on

evidentiary grounds unless, at a minimum, the verdict is against the great – not

merely the greater – weight of the evidence." *Id.* at 923 (quoting *Hewitt,* 732 F.2d at

1554). The judge must protect against manifest injustice in the jury's verdict, but it

is not her role to assess credibility where conflicting testimony has been presented

during the trial. *Id.* at 1558-59. Instead, the judge must defer to the jury on the

weight to be given to each witness's testimony. *Id.*

### (2)   Analysis of Defense Counsel's Alleged Misconduct

Plaintiff argues that the Court should order a new trial on her retaliation

claim because Defendants violated several in limine rulings that prejudiced the

jury.[5] More specifically, Plaintiff claims that the evidence was strongly in her favor

on her retaliation claim if not for Defendants' conduct in prejudicing the jury when

---

[5]    To the extent the Court denies Plaintiff's request for entry of judgment on her overtime claim under Rule 50, Plaintiff also seeks a new trial on her overtime claim under Rule 59. Plaintiff never explains, however, how the *in limine* violations impacted her overtime claim. Instead, Plaintiff focuses entirely on her retaliation claim. This omission leaves open the question of whether Plaintiff believes that the *in limine* violations impacted one or both claims. And if the *in limine* violations altered the jury's verdict on both claims, Plaintiff never makes that point clear. But we assume for purposes of this motion that, had we granted Plaintiff any Rule 59 relief on the retaliation claim, the same result should follow as to the overtime claim.

they referenced her prior FLSA lawsuit and compared her to "an animal." Plaintiff insists that a new trial is necessary to remedy these violations because the jury verdict cannot be reconciled with the evidence presented.[6]

First, Plaintiff argues that – despite the Court directing Defendants to not refer to Plaintiff as a bad person – Defendants ignored that instruction and referred to Plaintiff as an animal. Plaintiff specifically takes issue with Defendants' closing arguments where Defendants summarized this case as a "wolf in sheep's clothing." Plaintiff claims that there are numerous cases involving motions for new trials when one party uses the phrase "a wolf in sheep's clothing," but concedes that they are only in criminal cases. Nonetheless, Plaintiff argues that the same principle applies in civil cases and that the conduct of Defendants' attorneys necessitates a new trial because Defendants dehumanized her in front of the jury.

Second, Plaintiff argues that, prior to trial, she moved to exclude any references to a prior FLSA lawsuit where she claimed overtime and minimum wage violations. The Court denied Plaintiff's motion with leave to renew at trial and stated that, if Defendants wished to introduce evidence of prior FLSA lawsuits, they needed to explain why it fits within the exception of Rule 404:

> We recognize Plaintiff's concern that the introduction of prior FLSA lawsuits may raise collateral issues that are not germane to the facts of this case. However, we are unprepared on a motion to limine to

---

[6]    Plaintiff mentions in passing that the jury verdict was against the greater weight of the evidence but does not articulate that position with any substantive argument or applicable authority. Therefore, to the extent Plaintiff seeks relief on the merits of her claims under Rule 59 for the jury verdict being against the greater weight of the evidence, Plaintiff's motion is **DENIED** as conclusory and unsupported.

make a conclusive determination that Defendants' evidence is inadmissible. If Defendants wish to introduce evidence of Plaintiff's prior FLSA lawsuits, Defendants must explain why at trial it fits within the exception of Rule 404 and whether the probative value outweighs any prejudicial effect on the present case.

[D.E. 65 at 9].

Plaintiff contends that Defendants' violated the *in limine* ruling when defense counsel questioned Plaintiff on a prior FLSA claim without approaching the bench:

> Q. Have you ever had any issues with a prior employer with respect to unpaid overtime wages prior to working at Pescatlantic?
> A. What type of issues?
> Q. Did you ever sue a prior employer?
> Mr. Marban: Objection, Your Honor.
> The Court. Sustained.

[D.E. 93-2, Exh. E]. Although Plaintiff objected at the appropriate time, Plaintiff alleges that Defendants engaged in a calculated scheme to by-pass the *in limine* ruling in the days that followed.

For example, Plaintiff asserts that, on day three of the trial, Defendants violated the *in limine* ruling when they asked leading questions about Plaintiff's prior lawsuit to Mr. Calvo:

> Q. . . . now after Denise Pineda no longer works there, is there anything with respect to when you're hiring a new employee or that you would do that you did not do at the time? Would you check reference or anything like that . . .
> A. I think the only thing I will do now is I will – before I hire, you mean, someone?
> Q. Yeah. Well, I guess while you're interviewing someone or before you hire them.
> A. First, I will go deeply on the interviews at least five to six times and I will – and I will check if those employees had any lawsuits against any companies in the past.

[D.E. 93-2].  Plaintiff concedes that she did not object at the time of the question on day three because it was difficult to anticipate the response.  However, Plaintiff believes that, if she had objected, it would have been fruitless because "the bell was already rung and the objection could have backfired."  [D.E. 93].

The third time that Defendants purportedly violated – or at least tried to violate – the Court's *in limine* ruling was when the Court excluded evidence of Plaintiff's work at a gentlemen's club at the pretrial conference.

> The next question is the Stir Crazy employment.  I think the relevance of that is so minimal.  And so you know if it is minimally relevant, I think on a 403 balancing, I just think that the plaintiff ahs a good point that it would be unduly prejudicial to allow it.  Again, any pretrial ruling is subject to reconsideration depending on what happens.

[D.E. 93-6].  Plaintiff admits that she may have opened the door on this issue during trial, but brings this to the Court's attention so that it may be considered.

In determining whether an attorney's misconduct warrants a new trial, courts consider "whether the improper assertions have made it 'reasonably probable' that the verdict was influenced by prejudicial statements."  *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 207 (3d Cir. 1992) (internal citation omitted).  The misconduct must rise to such a level " 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.' "  *Gonzalez v. Batmasian,* 734 F. App'x 677, 682 (11th Cir. 2018) (quoting *Vineyard v. Cty. of Murray, Ga.,* 990 F.2d 1207, 1213 (11th Cir. 1993)).  "Generally, misconduct by trial counsel results in a new trial if the 'flavor of misconduct sufficiently permeate[s] an entire proceeding to provide conviction that the jury was influenced by passion and

prejudice in reaching its verdict.'" *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1192 (9th Cir. 2002) (quoting *Kehr v. Smith Barney*, 736 F.2d 1283, 1286 (9th Cir. 1984) (alteration in original)).

"[T]he burden of requesting a new trial based on attorney misconduct is high." *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 183 F. Supp. 3d 1245, 1271 (S.D. Fla. 2016).  In meeting that burden the movant, and the Court, must "look to the entire argument, the context of the remarks, the objection raised, and the curative instruction." *Allstate Ins. Co. v. James,* 845 F.2d 315, 318 (11th Cir. 1988). And if timely objection is made and a curative instruction given, we presume that a jury follows the court's instructions. *See Gowski v. Peake,* 682 F.3d 1299, 1315 (11th Cir. 2012).

Here, Plaintiff's motion does not meet the high burden for a new trial based on the conduct of Defendants' attorneys.  First, Plaintiff concedes that she opened the door into the history of her work applications at the Pink Pony and BT's Gentlemen's Club when she introduced her job search log at trial.  Plaintiff claims that the Court should consider the prejudicial effect of any testimony that followed. But, Plaintiff's argument rings hollow because she opened the door to the testimony that she now complains of and – making matters worse – she fails to explain how her introduction of this evidence does not constitute a waiver of the *in limine* ruling.

Second, Plaintiff implicitly suggests that, for strategic reasons, she made the choice not to object when Mr. Calvo testified that he would check in the future on whether potential employees have sued their employers in the past.   Plaintiff

alleges that Defendants violated the Court's *in limine* ruling because the Court held that "[i]f the Defendants wish to introduce evidence of Plaintiff's *prior lawsuits*, Defendants must explain why at trial it fits within the exception of Rule 404 and whether the probative value outweighs any prejudicial effect on the present case." [D.E. 65 at 9] (emphasis added). Plaintiff's argument misses the mark because Mr. Calvo never testified about Plaintiff's prior FLSA lawsuits. Mr. Calvo only stated that he would change his hiring procedures going forward, meaning his testimony does not constitute a violation of the *in limine* ruling. And even if Mr. Calvo's testimony could be construed as a violation of the *in limine* ruling, Plaintiff fails to show how this permeated the trial or prejudiced the jury in reaching its verdict.

Plaintiff's final argument is equally unconvincing because – while she complains that Defendants compared this case to a "wolf in sheep's clothing," – Plaintiff fails to reference anywhere in the record where she objected to Defendants' conduct. That is, to the extent Plaintiff's argument has any merit, her failure to object to Defendants' conduct constitutes a waiver. And even if we put aside Plaintiff's failure to object, Plaintiff relies on no persuasive authority where Defendants' statement was deemed so prejudicial to warrant a new trial in a civil case. Defendants simply used a well-known idiom to describe Plaintiff's testimony; it is farfetched to conclude that Defendants literally compared Plaintiff to an animal. Indeed, no reasonable juror could make that leap.

The irony is that Defendants' counsel never called Plaintiff an animal, a bad mother, or a bad person. Plaintiff's counsel is the one who made reference to

Plaintiff as a "bad person," when counsel stated that "[t]he defendant is hoping that some of you might be prejudiced and think that, oh, she's a bad person." [D.E. 93-2 at 130]. Counsel was obviously trying to defuse the challenge that would be made to Plaintiff's credibility, due in part to her admission that she represented to Defendant that she had a high school degree when, in fact, she never graduated from high school. There was certainly nothing improper in that strategic decision; but at the same time it undermines the theory that Defendants were unfairly targeting the Plaintiff.

In a similar vein, Plaintiff's counsel took the same approach near the end of closing arguments:

> [O]pposing counsel said she's a bad person. You should rule against her because she applied at an adult entertainment club when she was out of a job, and she told you she prefers to do that rather than leave her children. He's trying to say she's a bad person. Don't rule against her.

[D.E. 93-2 at 169-170]. This shows that it was Plaintiff's counsel, not Defendants, that explicitly referred to Plaintiff as a bad person. Defendants may have implied it through their cross-examination; but no one labeled her as such during the trial. And nothing defense counsel said during closings or throughout the trial cause us to question the "calm and dispassionate consideration of the case by the jury." *Gonzalez v. Batmasian,* 734 F. App'x at 685 (affirming denial of Rule 59 motion for new trial in FLSA action based on plaintiff's counsel's statements that did not impair gravely the jury's deliberations).

### (3)    Analysis of Admission of Impeachment Witness

Plaintiff's final argument is that the Court erred when it allowed an undisclosed witness, Walter Gonzalez ("Mr. Gonzalez"), to testify for impeachment purposes.  Plaintiff claims that the witness's testimony should have been excluded because he provided both substantive and impeachment testimony.  Plaintiff further contends that Defendants used Mr. Gonzalez's testimony to argue that Plaintiff was not a good mother because she allowed a criminal to be around her children.  For these reasons, Plaintiff concludes that a new trial is required.

If a party "fails to provide . . . [the] identity of a witness as required by Rule 26(a) or (e), the party is not allowed to use that . . . witness to supply evidence on a motion . . . unless the failure is substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  A trial court considering a motion to exclude a witness not listed on the initial disclosures should look to three factors: "(1) the importance of the testimony; (2) the reason for the [party's] failure to disclose the witness earlier; and (3) the prejudice to the opposing party if the witness had been allowed to testify."  *Bearint ex rel. Bearint v. Dorell Juvenile Grp., Inc.,* 389 F.3d 1339, 1353 (11th Cir. 2004).  There is an exception, however, to the general rule that the identity of witnesses must be disclosed early on in a case.  If a witness is called solely to impeach the testimony of another witness, the party calling the impeaching witness need not have previously disclosed the identity of the impeaching witness. If a witness provides "any substantive testimony" that witness's identity must be previously disclosed. *Id.*

Here, Plaintiff's argument is misplaced for many of the reasons already discussed because Defendants never referred to Plaintiff as a bad mother and Plaintiff fails to reference any part of the record to support her contention. Plaintiff's theory is also misguided because she claims that Mr. Gonzalez provided substantive testimony, even though the record shows quite clearly that the undersigned limited any testimony solely for impeachment purposes. Therefore, Plaintiff's argument that the Court erred in allowing Mr. Gonzalez to testify as an impeachment witness lacks merit.

## III.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Plaintiff's motion for new trial is **DENIED**. [D.E. 93]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of April, 2019.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge